UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SUZANNE MCCABE, | 3:14-cv-00396-LRH-WGC |
| Plaintiff, | **REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

This Report and Recommendation is made to the Honorable Larry R. Hicks, Senior United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.§ 636(b)(1)(B) and the Local Rules of Practice, LR IB 1-4. Before the court is Plaintiff Michelle Bogue's Motion for Reversal and/or Remand (Doc. # 10)[1] and Notice of New Authority (Doc. # 15). The Commissioner filed a Cross-Motion to Affirm. (Doc. # 16.)

After a thorough review, the court recommends that Plaintiff's motion be granted and the matter be remanded to the ALJ for further proceedings, and that the Commissioner's cross-motion be denied.

**I. BACKGROUND**

On April 22, 2010, Plaintiff filed an application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Administrative Record (AR) 87-88.) The Commissioner denied the application initially and on reconsideration. (AR 51-58.) Plaintiff made a timely request for a hearing before an Administrative Law Judge (ALJ). (AR 59-60.)

---

[1] Refers to court's docket number.

1  On April 12, 2012, Plaintiff appeared, represented by counsel, for a hearing before the ALJ. (AR
2  392-414.) Plaintiff testified, as did a vocational expert (VE). (*Id.*) On May 3, 2012, the ALJ
3  issued a decision finding Plaintiff not disabled. (AR 32-46.) Plaintiff appealed. (AR 29.)
4  On September 14, 2013, the Appeals Council vacated the ALJ's May 3, 2012 decision
5  and remanded for a de novo hearing because the recording of the hearing testimony and claims
6  file could not be located and the Appeals Council did not have a complete record to review. (AR
7  22-27.) Subsequent to the remand, the missing recording and claims file were located; therefore,
8  the Appeals Council vacated the previous order remanded the case and reinstated the request for
9  review. (AR 22.)
10 The Appeals Council received additional evidence which it made part of the record
11 (medical records from Dr. Vidur Mahedera for September 9, 2010 through January 25, 2012, and
12 MRI findings from Renown Imaging dated November 2, 2012). (AR 11.) The Appeals Council
13 denied review on May 30, 2014. (AR 7-10.) Thus, the ALJ's decision became the final decision
14 of the Commissioner.
15 Plaintiff now appeals the decision to the district court. (Doc. # 10.) Plaintiff argues that
16 the ALJ erred in failing to recognize three apparent conflicts between the testimony given by the
17 VE and the Dictionary of Occupational Titles (DOT)[2] without securing a reasonable explanation
18 regarding those conflicts from the VE.
19 Plaintiff claims disability due to back disorders, a plate in her neck, and asthma. (AR 365,
20 371C.) The ALJ determined that Plaintiff suffers from the following severe impairments: status
21 post cervical surgery and degenerative disc disease. (AR 37.) The ALJ assessed Plaintiff as
22 having retained the residual functional capacity (RFC) to perform sedentary work with a sit-
23 stand option every half hour for adjustment; she can frequently balance, but only occasionally
24 climb ramps/stairs, stoop, bend, crouch and kneel; she can never climb ladders/ropes/scaffolds or
25 crawl; she can perform no more than occasional rotation, flexion and extension of the neck; she
26 can engage in occasional bilateral overhead reaching; she must avoid concentrated exposure to

---

[2] In determining requirements for work, the agency relies primarily upon the DOT. SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

1  extreme cold and vibration; she must avoid all exposure to hazards such as moving machinery
2  and unprotected heights; and she may perform simple repetitive tasks. (AR 39.) At the hearing,
3  the ALJ took testimony from a VE, and determined based on the evidence in the record and the
4  assessed RFC, that Plaintiff could not perform her past relevant work. (AR 44, 408.) Then,
5  considering Plaintiff's RFC, age, education, work experience and the testimony of the VE, the
6  ALJ concluded that one job exists in significant numbers in the national economy that Plaintiff is
7  capable of performing−telephone quotation clerk (DOT 237.367-046). (AR 44, 408-410.)
8        First, Plaintiff argues that while the ALJ limited her to simple, repetitive tasks, this is
9  inconsistent with the DOT's description for the telephone quotation clerk job which is assigned a
10 DOT reasoning level 3. (Doc. # 10 at 10-11.) Plaintiff asserts that simple, repetitive tasks are
11 consistent with reasoning levels one and two, but not three. (*Id.*) Second, Plaintiff contends the
12 ALJ limited her to occasional bilateral reaching, but the DOT description for a telephone
13 quotation clerk indicates that the job requires frequent reaching which exceeds her functional
14 limitations. (*Id*. at 11-13.) Finally, Plaintiff asserts that the ALJ concluded that Plaintiff must be
15 given a sit/stand option as needed during the workday, and the VE testified that the telephone
16 quotation clerk position allowed for a sit/stand option; however, the DOT description does not
17 actually address whether a sit/stand option is available for this job, and the VE did not testify that
18 her opinion was based on anything other than the DOT. (*Id*. at 13-16.)
19       Conversely, the Commissioner argues that the ALJ's decision should be affirmed. (Doc.
20 # 16.) The Commissioner acknowledges that the agency relies primarily upon the DOT in
21 determining requirements for work in conjunction with VE testimony. (*Id*. at 5:4-7.) In response
22 to Plaintiff's first argument, the Commissioner contends that the telephone quotation clerk job
23 consists of answering telephone calls from customers and calling customers, which are simple
24 and routine tasks, and taking into consideration all of the evidence in the record, the ALJ
25 properly concluded that Plaintiff could perform the work of a telephone quotation clerk (citing
26 evidence in the record that Plaintiff managed her own finances, was never recommended by her
27 physicians to seek treatment for mental impairments, and had past relevant skilled and semi-
28 skilled work). (*Id*. at 5-6.) Alternatively, the Commissioner argues that if the court finds the ALJ

1 erred in failing to reconcile the inconsistency between the limitation to simple, repetitive tasks
2 and a job with a reasoning level of 3, any error by the ALJ in this regard was harmless since the
3 evidence suggests Plaintiff could perform at this reasoning level. (*Id*. at 6.)

4       With respect to Plaintiff's second argument concerning the occasional overhead reaching
5 limitation and the DOT description for the job that included frequent reaching, the Commissioner
6 argues there was no apparent conflict between the VE's testimony that Plaintiff could perform an
7 occupation requiring frequent reaching in all directions and her limitation to occasional overhead
8 reaching. (*Id*. at 9.) While the DOT indicates that this job requires a worker to reach a total of
9 one-third to two-thirds of the day, the Commissioner argues that it does not necessarily follow
10 that more than one-third of the reaching would be overhead.[3] Since the DOT does not address
11 what percentage of reaching would be overhead, the Commissioner asserts that there is no
12 conflict between the DOT and the VE's testimony, and even if there was, it was not an *apparent*
13 conflict. (*Id*. at 9-10.) In addition, the Commissioner points out that Plaintiff's counsel did not
14 question the VE about this purported conflict, suggesting it was not apparent. (*Id*. at 10.)

15       In response to Plaintiff's third argument−that the DOT does not address whether a sit-
16 stand option is available for this job−the Commissioner contends there is no conflict. (*Id*. at 10-
17 11.) The Commissioner relies on *Thomas v. Barnhart*, 278 F.3d 947, 854 (9th Cir. 2002), in
18 stating that a hypothetical individual with a sit/stand option and limitation in use of the right
19 hand could still perform the job of telephone quotation clerk. (Doc. # 6 at 10.) Again, the
20 Commissioner highlights that Plaintiff's counsel did not question the VE about this purported
21 conflict. (*Id*. at 11.)

## **II. STANDARD OF REVIEW**

23     The court must affirm the ALJ's determination if it is based on proper legal standards and
24 the findings are supported by substantial evidence in the record. *Gutierrez v. Comm'r Soc. Sec.*
25 *Admin.*, 740 F.3d 519, 522 (9th Cir. 2014) (citing 42 U.S.C. § 405(g)). "Substantial evidence is
26 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a

---

[3] Less than one-third qualifies as occasional, while one-third to two-thirds qualifies as frequent. SSR 83-14.

- 4 -

reasonable mind might accept as adequate to support a conclusion.'" *Gutierrez*, 740 F.3d at 523-24 (quoting *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012)).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Gutierrez*, 740 F.3d at 524 (citing *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001)). The court "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). "'The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Id*. (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "If the evidence can reasonably support either affirming or reversing, 'the reviewing court may not substitute its judgment' for that of the Commissioner." *Gutierrez*, 740 F.3d at 524 (quoting *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1996)). That being said, "a decision supported by substantial evidence will still be set aside if the ALJ did not apply proper legal standards." *Id*. (citing *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009); *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). In addition, the court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

### III. DISCUSSION

**A. Five-Step Sequential Process**

Under the Social Security Act, "disability" is the inability to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). A claimant "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in

which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(b).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. 20 C.F.R. § 404.1520 and § 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987). If at any step the Social Security Administration (SSA) can make a finding of disability or nondisability, a determination will be made and the SSA will not further review the claim. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). "'The burden of proof is on the claimant at steps one through four, but shifts to the Commissioner at step five.'" *Garrison*, 759 F.3d at 1011 (quoting *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009)).

In the first step, the Commissioner determines whether the claimant is engaged in "substantial gainful activity"; if so, a finding of nondisability is made and the claim is denied. 20 C.F.R. § 404.1520(a)(4)(i), (b); § 416.920(a)(4)(i); *Yuckert*, 482 U.S. at 140. If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to step two.

The second step requires the Commissioner to determine whether the claimant's impairment or a combination of impairments are "severe." 20 C.F.R. § 404.1520(a)(4)(ii), (c) and § 416.920(a)(4)(ii); *Yuckert*, 482 U.S. at 140-41. An impairment is severe if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. Basic work activities are "the abilities and aptitudes necessary to do most jobs[,]" which include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment; (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521 and § 416.921. If a claimant's impairment is so slight that it causes no more than minimal functional limitations, the Commissioner will find that the claimant is not disabled. 20 C.F.R.§ 404.1520(a)(4)(ii), (c) and 416.920(a)(ii). If, however, the Commissioner finds that the claimant's impairment is severe, the Commissioner proceeds to step three. *Id*.

In the third step, the Commissioner looks at a number of specific impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listed Impairments) and determines whether the

1  impairment meets or is the equivalent of one of the Listed Impairments. 20 C.F.R.
2  § 404.1520(a)(4)(iii), (d) and §  416.920(a)(4)(iii), (c). The Commissioner presumes the Listed
3  Impairments are severe enough to preclude any gainful activity, regardless of age, education, or
4  work experience. 20 C.F.R. §  404.1525(a). If the claimant's impairment meets or equals one of
5  the Listed Impairments, and is of sufficient duration, the claimant is conclusively presumed
6  disabled. 20 C.F.R. §  404.1520(a)(4)(iii), (d), §  416.920(d). If the claimant's impairment is
7  severe, but does not meet or equal one of the Listed Impairments, the Commissioner proceeds to
8  step four. *Yuckert*, 482 U.S. at 141.
9       At step four, the Commissioner determines whether the claimant can still perform "past
10 relevant work." 20 C.F.R. § 404.1520(a)(4)(iv), (e), (f) and § 416.920(a)(4)(iv), (e), (f). Past
11 relevant work is that which a claimant performed in the last fifteen years, which lasted long
12 enough for him or her to learn to do it, and was substantial gainful activity. 20 C.F.R.
13 § 404.1565(a) and § 416.920(b)(1).
14      In making this determination, the Commissioner assesses the claimant's residual
15 functional capacity (RFC) and the physical and mental demands of the work previously
16 performed. *See id.;* 20 C.F.R. § 404.1520(a)(4); *see also Berry v. Astrue*, 622 F.3d 1228, 1231
17 (9th Cir. 2010). RFC is what the claimant can still do despite his or her limitations. 20 C.F.R.
18 § 1545 and § 416.945. In determining RFC, the Commissioner must assess all evidence,
19 including the claimant's and others' descriptions of limitation, and medical reports, to determine
20 what capacity the claimant has for work despite the impairments. 20 C.F.R. § 404.1545(a) and
21 § 416.945(a)(3).
22      A claimant can return to previous work if he or she can perform the "actual functional
23 demands and job duties of a particular past relevant job" or "[t]he functional demands and job
24 duties of the [past] occupation as generally required by employers throughout the national
25 economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (internal quotation marks and
26 citation omitted).
27      If the claimant can still do past relevant work, then he or she is not disabled for purposes
28 of the Act. 20 C.F.R. § 404.1520(f) and § 416.920(f); *see also Berry*, 62 F.3d at 131 ("Generally,

a claimant who is physically and mentally capable of performing past relevant work is not disabled, whether or not he could actually obtain employment.").

If, however, the claimant cannot perform past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform work available in the national economy. 20 C.F.R. § 404.1520(e) and § 416.290(e); *see also Yuckert*, 482 U.S. at 141-42, 144. This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Gutierrez*, 740 F.3d at 528. If the claimant cannot do the work he or she did in the past, the Commissioner must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Yuckert*, 482 U.S. at 141-42. The Commissioner may meet this burden either through the testimony of a vocational expert or by reference to the Grids. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).[4]

If at step five the Commissioner establishes that the claimant can do other work which exists in the national economy, then he or she is not disabled. 20 C.F.R. § 404.1566. Conversely, if the Commissioner determines the claimant unable to adjust to any other work, the claimant will be found disabled. 20 C.F.R. § 404.1520(g); *see also Lockwood*, 616 F.3d at 1071; *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

**B. ALJ's Findings in this Case**

In the present case, the ALJ applied the five-step sequential evaluation process and found, at step one, that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of December 14, 2008. (AR 37.)

---

[4] "The grids are matrices of the four factors identified by Congress—physical ability, age, education, and work experience—and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy." *Lockwood v. Comm'r of Soc. Sec. Admin.*, 616 F.3d 1068, 1071 (9th Cir. 2010) (internal quotation marks and citation omitted). The Grids place jobs into categories by their physical-exertional requirements, and there are three separate tables, one for each category: sedentary work, light work, and medium work. 20 C.F.R. Part 404, Subpart P, Appx. 2, § 200.00. The Grids take administrative notice of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels. *Id*. Each grid has various combinations of factors relevant to a claimant's ability to find work, including the claimant's age, education and work experience. *Id*. For each combination of factors, the Grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in that category. *Id*.

At step two, the ALJ found it was established Plaintiff suffered from the following severe impairments: status post cervical surgery and degenerative disc disease. (AR 37.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the Listed Impairments. (AR 38.)

At step four, the ALJ found Plaintiff had the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and § 416.967(a) with a sit-stand option every half hour for adjustment; she can frequently balance, but only occasionally climb ramps/stairs, stoop, bend, crouch and kneel; she can never climb ladders/ropes/scaffolds or crawl; she can perform no more than occasional rotation, flexion and extension of the neck; she can engage in occasional bilateral overhead reaching; she must avoid concentrated exposure to extreme cold and vibration; she must avoid all exposure to hazards such as moving machinery and unprotected heights; and she may perform simple repetitive tasks. (AR 39.) The ALJ then determined Plaintiff was unable to perform any past relevant work. (AR 44.)

At step five, the ALJ took into account that Plaintiff was forty years old (defined as a younger individual), had at least a high school education and was able to communicate in English, her work experience and RFC, and the VE's testimony in determining that a single job exists in significant numbers in the national economy that Plaintiff is capable of performing: telephone quotation clerk, DOT 237.367-046. (AR 44-45.) Thus, the ALJ concluded Plaintiff was not disabled. (AR 45.)

**C. RFC Limited to Simple, Repetitive Tasks and Job with DOT Reasoning Level 3**

The ALJ limited Plaintiff to simple, routine, repetitive tasks. (AR 39.) The ALJ posed an initial hypothetical to the VE, and then added limitations including, a person who could perform only simple, routine, repetitive tasks, which led the VE to identify only the telephone quotation clerk job, DOT 237.367-046, as a job available in significant numbers in the national economy that Plaintiff is capable of performing. (AR 409-410.) The job has a reasoning level 3 which is described as "apply commonsense understanding to carry out instructions furnished in written,

oral, or diagrammatic form. Deal with problems involving several concrete variables in or from standardized situations." DICOT 237.367-046.

A recent Ninth Circuit case addresses the issue of when an ALJ's RFC assessment limits a claimant to simple, routine or repetitive tasks, and the occupations identified by the ALJ have a reasoning level 3. *Zavalin v. Colvin*, 778 F.3d 842 (9th Cir. 2015). Zavalin was limited to simple, routine or repetitive tasks, and both occupations identified by the VE and adopted by the ALJ required level 3 reasoning. *Id*. at 843. The court concluded there was an apparent conflict between the limitation and the demands of level 3 reasoning which needed to be reconciled by the ALJ. *Id*. at 844. Similar to the circumstances here, the ALJ in Zavalin did not ask the VE how a person with a limitation to simple, repetitive tasks could meet level 3 reasoning requirements. *See id*. In addition, as is the case here, the ALJ did not explain in the decision whether the claimant had the reasoning ability required to perform the identified occupations. *Id*. at 845.

The Ninth Circuit reaffirmed that at step five, the ALJ assesses the claimant's RFC, and then considers potential jobs the claimant may be able to perform, relying primarily on the DOT. *Id*. at 845-46 (citations omitted). "The DOT describes the requirements for each listed occupation, including the necessary General Educational Development (GED) levels; that is, 'aspects of education (formal and informal) ... required of the worker for satisfactory job performance.'" *Id*. at 846 (citing DOT, App. C, 1991 WL 688702 (4th ed. 1991)). "The GED levels include the reasoning ability required to perform the job, ranging from Level 1 (which requires the least reasoning ability) to Level 6 (which requires the most)." *Id*.  Additionally, the ALJ relies on VE testimony with regard to specific occupations a claimant can perform in light of his or her RFC. *Id*. (citations omitted). Then, given the claimant's RFC, age, education and work experience, the ALJ determines whether there are jobs available in significant numbers in the national economy that the claimant can perform. *Id*.

The Ninth Circuit then reiterated that "[w]hen there is an apparent conflict between the vocational expert's testimony and the DOT ... the ALJ is required to reconcile the inconsistency." *Id*. (citing *Massachi v. Astrue*, 486 F.3d 1149, 1153-54 (9th Cir. 2007)). "The

1   ALJ must ask the expert to explain the conflict and 'then determine whether the vocational
2   expert's explanation for the conflict is reasonable' before relying on the expert's testimony to
3   reach a disability determination." *Id*. (citing *Massachi*, 486 F.3d at 1153-54; Social Security
4   Ruling 00-4P, 2000 WL 1898704, at * 2 (Dec. 4, 2000)). Zavalin argued, as Plaintiff does here,
5   that there was an "inherent inconsistency between [the] limitation to simple, routine tasks, and
6   the requirements of Level 3 Reasoning." *Id*. The Ninth Circuit agreed with Zavalin that there was
7   in fact "an apparent conflict between the residual functional capacity to perform simple,
8   repetitive tasks, and the demands of Level 3 Reasoning." *Id*. at 847. The court said this was
9   obvious when the definitions of level 2 and level 3 reasoning were compared side-by-side. *Id*.
10      The court must therefore conclude here, as the Ninth Circuit did in *Zavalin*, that the ALJ
11  erred in failing to recognize the inconsistency and in failing to ask the VE to explain how a
12  person with a limitation to simple, repetitive tasks could perform a job with a level 3 reasoning
13  requirement. *See id*.
14      Now, the court must address, as did the Ninth Circuit in *Zavalin*, whether the ALJ's error
15  is harmless. *See id.* at 848. The Commissioner argues that the error is harmless because Plaintiff
16  previously performed work as a carpenter and semi-skilled work of an auto glass installer and
17  bar waitress, she could take care of most of her personal needs, perform household chores and go
18  shopping, regularly attending medical appointments, got alone fine with authority figures, could
19  pay bills, count change, handle her accounts, and visited with others which demonstrate her
20  ability to handle the requirements of level 3 reasoning. (Doc. # 16 at 6-7.) In addition, the
21  Commissioner asserts that the State agency doctors agreed that Plaintiff was capable of
22  performing work despite her claims of debilitating mental impairments. (*Id*. at 7.)
23      In undertaking the harmless error analysis, the court is "'constrained to review the
24  reasons the ALJ asserts'" and "'cannot affirm the decision of an agency on a ground that the
25  agency did not invoke in making its decision.'" *Zavalin*, 778 F.3d at 848 (quoting *Stout v.*
26  *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006)).
27      As the Commissioner points out, this job involves answering phone "calls from
28  customers requesting current stock quotations and provid[ing] information posted on electronic

quote board," relaying calls to a registered representative as requested by the customer, and may involve calling a customer "to inform them of stock quotations." DOT 237.367-046. The court notes, however, that the ALJ took all of the evidence highlighted in the Commissioner's brief into consideration in determining that Plaintiff should still be limited to simple, repetitive tasks. Therefore, the court cannot conclude that this same evidence simultaneously establishes, on its own, that Plaintiff is capable of level 3 reasoning. In other words, the court cannot determine at this juncture whether Plaintiff's ability to, *e.g.,* take care of some personal needs and go to medical appointments necessarily means that she can "apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" or "[d]eal with problems involving several concrete variables in or from standardized situations."

As a result, the court recommends that this matter should be remanded to the ALJ to reconcile the apparent conflict between the limitation to simple, repetitive tasks and the DOT reasoning level 3 requirement of the telephone quotation clerk job.

**D. RFC Limitation to Occasional Bilateral Reaching and DOT Description of Frequent Reaching**

The DOT entry for the telephone quotation clerk job indicates that the job requires frequent reaching which is defined as existing from one-third to two-thirds of the time. DICOT 237.367-046. The ALJ limited Plaintiff to occasional bilateral overhead reaching. (AR 39.) The DOT does not address what portion of the reaching required in this job is bilateral overhead reaching. The Department of Labor describes "reaching" as "extending hand[s] and arm[s] in any direction." (*Id*.) As such, she maintains that the occupation would require frequent reaching, which is precluded by the ALJ's RFC limitation to occasional, bilateral reaching. (*Id*.) Conversely, the Commissioner argues that because the DOT does not specifically address the rate at which a worker would be expected to reach overhead, there is no conflict between the DOT and the VE's testimony. (Doc. # 16 at 9-10.)

In *Massachi v. Astrue*, the court held that in light of Social Security Ruling (SSR) 00-4p, an ALJ may not rely on the testimony of a VE regarding a job's requirements without first determining whether the VE's testimony conflicts with the DOT. *Massachi*, 486 F.3d 1149,

1150, 1152 (9th Cir. 2007). The Ninth Circuit highlighted Social Security Ruling 00-4p's unambiguous statement that when a VE testifies about job requirements, the ALJ "has an *affirmative responsibility* to ask about any possible conflict between" the testimony and the DOT. *Id*. at 1152 (citing SSR 00-4p at *4) (emphasis original). If there is an apparent conflict, the ALJ must obtain a reasonable explanation from the VE. *Id*.

The court must determine whether there is an apparent conflict, and if so, whether the ALJ erred in failing to secure a reasonable explanation for the conflict.

Plaintiff points to a Southern District of California decision, *Jordan v. Astrue*, No. 09-CV-1559 MMA (WMc), 2010 WL 2816234 (S.D. Cal. May 4, 2010), to support her position. *Jordan*, 2010 WL 2816234, order adopting report and recommendation, 2010 WL 2816233 (S.D. Cal., Jul. 16, 2010). In that case, the ALJ's RFC assessment limited the claimant to, *inter alia*, occasional overhead reaching with the right shoulder. *Id*. at * 3. The claimant could not perform past relevant work, but the VE identified and the ALJ adopted three alternative positions the claimant could perform. *Id*. The claimant argued to the district court that the ALJ erred by relying on testimony by the VE that was in conflict with the DOT where the DOT descriptions for the identified jobs required frequent reaching, and in the case of the third job, constant reaching. *Id*. at * 4. Magistrate Judge McCurine concluded (and District Judge Anello adopted) that there was a clear conflict between the frequent and constant reaching requirements of the identified jobs and the claimant's RFC limitation to occasional reaching. *Id*. at * 5. Judge McCurine pointed out that the DOT did not make a distinction between reaching with the left or right hand, and did not distinguish between overhead and other types of reaching; that this was a conflict; and, the ALJ's failure to provide an explanation as to how to resolve the conflict constituted an error that warranted remand further proceedings. *Id*.

In 2012, Northern District of California District Judge Lucy Koh similarly found that an apparent conflict exists between VE testimony that certain jobs can be performed with only occasional reaching and the DOT description for those jobs requiring frequent reaching. *Richardson v. Astrue,* No. 11-CV-1332-LHK, 2012 WL 5904733, at * 6 (N.D. Cal. Nov. 26, 2012). There, the Commissioner raised the argument, as is raised here, that there is no conflict

1    because the DOT does not distinguish between overhead reaching and other types of reaching.
2    *Id*. Judge Koh rejected this argument, citing other decisions where courts have concluded that
3    such a conflict exists, and asserted that the failure of the ALJ to explore this inconsistency with
4    the VE precludes the court from determining whether substantial evidence supports the finding
5    the claimant was not disabled. *Id.* (citing *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir.
6    2006); *Jordan*, 2010 WL 2816234, at * 5).

7         This position was also adopted by Judge McCormick in the Central District of California
8    in 2014. *See Samsaguan v. Colvin*, No. EDCV 12-2219-DFM, 2014 WL 218419 (C.D. Cal. Jan.
9    21, 2014) ("The Social Security Regulations define reaching as 'extending the hands and arms in
10   *any* direction.' Social Security Ruling ("SSR") 85-15, 1985 WL 56857... It is apparent that the
11   DOT's requirements conflict with a limitation of occasional reaching above the shoulder.").

12        The Commissioner points to a decision from the Eastern District of California,
13   *Espinosa v. Astrue*, 2008 WL 1833546 (E.D. Cal. Apr. 22, 2008) to support her position that
14   there is no conflict. (Doc. # 16 at 9-10.) There, the claimant argued that he did not have the RFC
15   to perform the alternative work identified by the VE and adopted by the ALJ. *Id.* at * 9. The ALJ
16   had concluded the claimant's non-exertional limitations included only occasional overhead
17   reaching, but no other reaching limitations. *Id*. at * 9. In that case, "the VE testified that a person
18   who could reach overhead occasionally and should avoid hyperextension of the neck on a
19   frequent basis, but was otherwise unlimited in reaching could not perform Plaintiff's past
20   relevant work...However, the VE testified that this person could perform a DOT classification for
21   solderer-assembler in the welding category..." *Id*. "The VE also testified that this person could
22   perform semi-skilled welder positions and unskilled medium hand packing jobs." *Id*.

23        Magistrate Judge Austin concluded in *Espinosa* that there was no apparent conflict, and
24   the ALJ's procedural error in failing to ask about a conflict was harmless. *Id*. Judge Austin
25   concluded that the VE's testimony "demonstrate[d] that she took into account the reaching
26   restrictions at least when considering the DOT solderer-assembler position." *Id*. at * 11. Judge
27   Austin further stated that because the claimant's reaching limitation was confined to overhead
28

reaching, the claimant "presumably could reach on a frequent or constant basis in all directions except overhead." *Id*.

The court agrees with the analysis of Judges McCurine and Anello in the Southern District of California, Judge Koh in the Northern District of California, and Judge McCormick in the Central District of California. The court concludes that there is an apparent conflict between the ALJ's RFC assessment of Plaintiff which limited her to occasional bilateral overhead reaching and the frequent reaching requirement of the telephone quotation clerk job. The ALJ failed to recognize this conflict, and further failed to secure a reasonable explanation from the VE for this conflict.

The court respectfully disagrees with Judge Austin's position. Judge Austin concluded that Espionsa could presumably reach on a frequent or constant basis in all other directions, but that does not take into account that the DOT does not describe what portion of the job would require overhead reaching. If, for example, the job required frequent reaching, and the VE testified that in her experience (or based on some other reasonable source) the position would never involve overhead reaching or would in fact involve only occasional or less than occasional overhead reaching, then the claimant could still perform that job. If, on the other hand, the job involved significant overhead reaching, so as to qualify as "frequent," then the claimant would appear to be precluded from performing the position. The court views this as an apparent conflict, and the ALJ's failure to recognize the conflict and obtain a reasonable explanation from the VE in this case was in error.

As a result, the court recommends that this matter be remanded to the ALJ for further development of the record to determine whether the Plaintiff can actually perform the requirements of the telephone quotation clerk position given her limitation to occasional, bilateral overhead reaching.

///

///

///

**E. Limitation to Jobs with Sit-Stand Option and Absence of DOT Description Regarding Availability of Sit-Stand Option**

The ALJ concluded that Plaintiff must have a sit-stand option every half hour for adjustment. (AR 39.) Plaintiff is correct that the DOT entry does not address whether a sit-stand option is available for this job. DICOT 237.367-046.

Plaintiff relies on several unpublished decisions from the Ninth Circuit and a decision from the Northern District of California in support of her position. First, in *Buckner-Larkin v. Astrue*, 450 Fed.Appx. 626 (9th Cir. 2011), the Ninth Circuit recognized that there is an apparent conflict between the DOT and VE testimony regarding the ability to perform jobs that allow a sit-stand option because the DOT does not discuss a sit-stand option. *Id*. at 628-29. In that case, however, the VE noted that "although the DOT does not discuss a sit-stand option, his determination was based on his own labor market surveys, experience, and research[;]" as such, the Ninth Circuit concluded the VE adequately addressed and explained the conflict. *Id*. at 629.

Second, in *Manes v. Astrue*, 267 Fed. Appx. 586 (9th Cir. 2008), the Ninth Circuit concluded that the ALJ erred by not inquiring into a "conflict between the DOT classification of the parking lot job as light work and the VE's conclusion that some parking lot attendant jobs could be filled by [the claimant], whom the ALJ determined was limited to sedentary work with a sit stand option." *Id*. at 588. The court confirmed that the ALJ was required to inquire into a conflict between the VE testimony and the DOT and obtain a reasonable explanation for the conflict. *Id*. at 488-89 (citing *Massachi*, 486 F.3d at 1152-53). The ALJ failed to do so; therefore, the court reversed and remanded for further proceedings.

Third, in *Valenzuela v. Astrue*, 2009 WL 1537876 (N.D. Cal. June 2, 2009), the VE identified several jobs that could be performed with a sit-stand option, and the court recognized that the DOT descriptions of those jobs do not address whether a sit-stand option is available. *Id*. at * 3. The court concluded that the ALJ erred "since occupational evidence provided by the VE's testimony was potentially in conflict with the DOT." *Id*. Judge Alsup concluded that under *Massachi*, a conflict may exist even if VE testimony does not directly contradict DOT

information, and any potential inconsistent is sufficient to warrant inquiry. *Id*. The matter was remanded. *Id*. at * 4.

Other district courts have recognized such a conflict, and have found that there is a conflict when a VE opines about a matter on which the DOT is silent. *See Brown v. Astrue,* No. 2:11-cv-0665 DAD, 2012 WL 4092434 (E.D. Cal. Sept. 17, 2012); *Cooley v. Astrue,* No. CV 10-03432-MAN, 2011 WL 2554222 (C.D. Cal. Jun. 27, 2011) ("many district courts have construed the Ninth Circuit's holding in *Massachi* ... to mean that 'where ... an expert opines on an issue about which the DOT is silent, a conflict exists.'"); *Smith v. Astrue,* No. C 09-03777 MHP, 2010 WL 5776060, at * 11-12 (N.D. Cal. Sept. 16, 2010) ("This court holds that because the DOT does not address sit/stand options, the potential inconsistency between the vocational expert's testimony and DOT warrants further inquiry on remand."); *McDaniel v. Astrue*, No. 1:11-cv-00880-SMS, (E.D. Cal. Oct. 22, 2010).

The Commissioner, on the other hand, relies on *Thomas v. Barnhart*, 278 F.3d 947 (9th Cir. 2002) for the proposition that an individual who requires a sit/stand option could still perform the job of a telephone quotation clerk. (Doc. # 16 at 10.) In *Thomas*, the ALJ determined that the claimant's RFC included a sit-stand limitation. *Id*. at 954. The VE testified Plaintiff could work as, *inter alia*, a telephone quotation clerk. *Id*. There, the VE testified that the jobs identified permitted alternating sitting, standing and walking. *Id*.

The court agrees with Plaintiff and the unpublished decisions of the Ninth Circuit and the district court decisions cited above that there is an apparent conflict presented by VE testimony regarding jobs that will allow for a sit-stand option when the DOT does not address a sit-stand option. The DOT description for the telephone quotation clerk job does not specifically address the sit-stand option; however, it does state that the job is sedentary work which "involves sitting most of the time, but may involve walking or standing for brief periods of time." *Id*. That description states that the job *may* involve walking or standing for brief periods, but does not resolve whether the job offers a sit-stand option every half-hour for adjustment as the ALJ limited Plaintiff. Therefore, the court concludes there is a conflict between the DOT description and the VE testimony. Unlike the VE in *Buckner-Larkin*, neither the ALJ nor the VE specifically

1  addressed the conflict. At the end of her testimony, the ALJ asked the VE whether her testimony
2  was in accordance with the DOT, its companion publications and her experience, and the VE
3  responded affirmatively; however, VE did not specifically discuss whether her identification of
4  the job as allowing a sit-stand option was based on her own surveys, experience or research so
5  that the court could determine that the ALJ's reliance on this testimony in finding the Plaintiff
6  not disabled is based on substantial evidence.

7  The Commissioner's reliance on *Thomas* is unpersuasive. *Thomas* was decided before
8  *Massachi*, and the subsequent unpublished decisions of the Ninth Circuit indicate that consistent
9  with *Massachi*, an apparent conflict exists between the DOT and VE testimony regarding the
10 ability to perform jobs that allow a sit-stand option because the DOT does not discuss a sit-stand
11 option. Moreover, the *Thomas* court was not presented with the issue of whether there was a
12 conflict between the VE testimony and the DOT, or whether it was adequately addressed.
13 Instead, the court was tasked with resolving whether the ALJ's hypothetical posed to the VE
14 adequately incorporated the claimant's limitations concerning concentration, persistence and
15 pace; whether the ALJ properly or improperly rejected the opinions of the claimant's treating and
16 examining physicians; whether the ALJ properly or improperly discredited the claimant's
17 testimony as to the severity of her pain; and the proper application of the Grids. *Id*. at 954-61.

18 As a result, the court recommends that this matter be remanded to the ALJ to address the
19 conflict between the VE's testimony and the DOT. A proper disability determination cannot be
20 made absent that inquiry.

21 **F. Conclusion**

22 In sum, the court finds that the ALJ erred in failing to address apparent conflicts between
23 the VE testimony and the DOT with respect to Plaintiff's RFC limitations to simple, repetitive
24 tasks; occasional bilateral, overhead reaching; and the sit-stand option. This matter should be
25 remanded to the ALJ to address these conflicts.
26 ///
27 ///
28 ///

## V. RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Reversal and/or Remand (Doc. # 10) is **GRANTED** and the matter should be remanded to the ALJ to address the apparent conflicts between the VE testimony and the DOT as indicated above; and

**IT IS FURTHER RECOMMENDED** that the Commissioner's Cross-Motion to Affirm (Doc. # 16) be **DENIED**.

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule IB 3-2 of the Local Rules of Practice, specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of the District Court's judgment.

DATED: July 17, 2015

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE